UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Metropolitan Life Insurance Co.</u>

   v.       Civil No. 08-cv-248-JL
           Opinion No. 2009 DNH 146
<u>Judith A. Hanson, et al.</u>

**MEMORANDUM ORDER**

   This interpleader action involving the proceeds of a life
insurance policy presents a question of statutory interpretation:
whether the qualified domestic relations order ("QDRO") exception
to ERISA's pre-emption provision applies to welfare benefit plans
such as life insurance policies, or only to pension plans.
Metropolitan Life Insurance Company ("MetLife") initiated this
interpleader complaint to resolve competing claims to life
insurance benefits under an employee welfare benefit plan
established and maintained by General Electric Company for its
employee, decedent William J. Hanson.  Two of the three
interpleader defendants have cross-moved for summary judgment,
each claiming entitlement to the insurance benefits as a matter
of law.

   This court has subject matter jurisdiction over this
interpleader action under 28 U.S.C. § 1331 (federal question), 29
U.S.C. § 1132(e)(1) (federal question -- ERISA), 28 U.S.C. § 1335

(interpleader defendant diversity), and Federal Rule of Civil Procedure 22 (interpleader diversity).  After oral argument, summary judgment is granted in favor of interpleader defendants Christina L. Hogan, William S. Hanson, and Jill E. Hanson, the children from decedent William J. Hanson's first marriage.  As explained below, the clear, unambiguous language of the relevant ERISA provisions establishes that the QDRO exception to ERISA pre-emption applies not only to pension plans, but also to welfare benefit plans such as the life insurance policy at issue here.

## I.  **Applicable legal standard**

Summary judgment is appropriate where the "pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Two of the three interpleader defendants have moved for summary judgment.[1]  "Cross-motions simply require [the court] to determine whether either of the

---

[1]A third claimant, Janet M. Clauser, neither moved for summary judgment nor objected to either of the other parties' motions.  At oral argument, Ms. Clauser's counsel conceded that Clauser had no claim to the insurance benefits and supported the legal position advanced by the children from decedent William J. Hanson's first marriage.

parties deserves judgment as a matter of law on facts that are not disputed." <u>Littlefield v. Acadia Ins. Co.</u>, 392 F.3d 1, 6 (1st Cir. 2004) (quotation omitted).

## II.  **Background**

William J. Hanson worked for General Electric as a jet engine mechanic.  In 1966, he enrolled in a group insurance benefit plan provided by MetLife for the benefit of General Electric employees.  The plan included group life insurance coverage.  At the time, William and his wife Phyllis had three children ("Phyllis' children").  William and Phyllis divorced in 1980, and their divorce decree adopted their agreement that the MetLife insurance policy be maintained for the benefit of Phyllis and their children.  Phyllis' children are the first group of interpleader claimants.

William remarried, and he and his second wife, Janet Clauser, also had three children.  William and Janet divorced in 1995, and William this time agreed that the same life insurance policy would be maintained for the benefit of Janet and her children.  William executed a beneficiary designation form with the General Electric "enrollment center" notifying MetLife and naming Janet as beneficiary under the policy.  Janet Clauser is the second interpleader claimant.

The following year, William remarried, this time to Judith
Rideout.  He again changed the beneficiary designation of the
MetLife policy, this time naming Judith.  When William and Judith
divorced in 2002, the stipulation adopted in their divorce decree
awarded each of them "any and all life insurance policies owned
by that party, free and clear of any right, title or interest of
the other."  William never further modified the policy, and
Judith Rideout, the named beneficiary, is the third interpleader
claimant.

William died in 2005, survived by all three of his former
wives, and all six of his children.  The MetLife insurance policy
remained in effect and unencumbered.  Faced with the competing
claims of Phyllis' children, Clauser, and Rideout, MetLife filed
this interpleader action, asking the court to resolve the
competing claims.

III.  **Analysis**

The material facts are not in dispute.  The only dispute is
one of statutory interpretation:  whether the determination of
the proper beneficiaries of the Hanson insurance policy is
governed by the Employees Retirement Income Security Act (ERISA),
29 U.S.C. § 1001 et seq., or by state law.  If ERISA governs,
then state domestic relations law is pre-empted and Hanson's

4

third wife, Judith Rideout, is the proper beneficiary as the named beneficiary of the policy.  <u>See</u> 29 U.S.C. § 1144(a).  But if ERISA does not apply because the 1980 divorce decree dissolving the William Hanson-Phyllis Hanson marriage is exempt from ERISA's pre-emption provision as a qualified domestic relations order, then Phyllis' children are the proper beneficiaries.  <u>See</u> <u>id.</u> at § 1144(b)(7).

ERISA pre-empts state laws that "relate to" employee benefits plans.  <u>Id.</u> at § 1144(a) (stating that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in" ERISA).  This provision establishes a broad area of exclusively federal concern pre-empting state law claims that "relate to" an employee benefit plan.  <u>See</u> <u>FMC Corp. v. Holliday</u>, 498 U.S. 52, 58 (1990).

ERISA's "anti-alienation" provision requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."  29 U.S.C. § 1056(d)(1).  ERISA was amended by the Retirement Equity Act of 1984 (REA),[2] however, to provide that this prohibition on alienation and

---

[2]Pub. L. 98-397, 98 Stat. 1426.

5

assignment of pension benefits "shall not apply if the order is determined to be a qualified domestic relations order.  Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order."  Id. at § 1056(d)(3)(A).  The REA also added a provision exempting qualified domestic relations orders from the ERISA pre-emption provision.  Id. at § 1144(b)(7).  Thus, qualified domestic relations orders, or QDROs, are expressly exempted from ERISA's pre-emption and anti-alienation provisions.

The parties agree that Hanson's life insurance policy, issued by MetLife under a benefits package provided by General Electric, is a "welfare plan" within the meaning of, and governed by, ERISA.  29 U.S.C. § 1002(1).  They further agree that the 1980 divorce decree dissolving William and Phyllis Hanson's marriage is a qualified domestic relations order.  Id. at § 1056(d)(3)(B)(i).[3]  What the parties dispute is whether the QDRO

---

[3]ERISA defines "qualified domestic relations order" as "a domestic relations order ... which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan," and which also meets certain other requirements -- not disputed here -- set forth at 29 U.S.C. § 1056(3)(C) and (D).  Id.; see also id. at § 1056(d)(3)(B)(ii) (defining "domestic relations order").  One of those other requirements--specifically, that a domestic relations order may not override a prior QDRO--is what

exceptions to ERISA pre-emption applies to both pension plans and welfare plans (like the Hanson insurance policy), or applies only to pension plans.  Although not yet definitively answered in this circuit, this court agrees with the observation of the Second Circuit Court of Appeals:  "The answer to this question is clear from the face of the statute."  <u>Metro. Life Ins. Co. v. Bigelow</u>, 283 F.3d 436, 440 n.3 (2d Cir. 2002).

Unlike ERISA's anti-alienation provision, which applies only to pension plans, <u>see</u> 29 U.S.C. § 1056(d)(1) ("Each <u>pension</u> <u>plan</u> shall provide that benefits provided under the plan may not be assigned or alienated.") (emphasis added), the general ERISA pre-emption provision and the specific provision that exempts QDROs from pre-emption contain no such limitation.  <u>See</u> <u>id.</u> at § 1144(a) (pre-empting "any or all State laws, insofar as they may now or hereafter relate to any <u>employee</u> <u>benefit</u> <u>plan</u> described in" ERISA) (emphasis added); <u>id.</u> at § 1144(b)(7) (stating that the pre-emption provision shall not apply to QDROs, as defined in the anti-alienation provision).  Our court of appeals has expressly recognized this statutory distinction.  <u>See</u> <u>Barrs v.</u> <u>Lockheed Martin Corp.</u>, 287 F.3d 202, 209 n.7 (1st Cir. 2002) ("Unlike the exception to the assignment ban, the exception to

disqualifies Janet Clauser's 1995 divorce decree as a possible basis for awarding her the benefits.  <u>Id</u>. at § 1056(3)(D)(iii).

the preemption provision is not literally limited to pension
plans."). Stated conversely, the exemption of qualified domestic
relations orders from ERISA pre-emption is set forth not in the
section of the statute that defines those orders, § 1056(d), but
rather in the general pre-emption provision, § 1144. That
provision, in turn, applies to both welfare and pension plans.

Judith Rideout argues that because the provision exempting
QDROs from ERISA pre-emption, 29 U.S.C. § 1147(b)(7),
incorporates by reference the definition of a QDRO that appears
in the anti-alienation provision, id. at § 1056(d)(3)(B)(i), it
must therefore be limited, as the anti-alienation provision is,
to pension plans. But the plain language of the QDRO definition
refers to "a plan," not just a pension plan. Id.; see also
Barrs, 287 F.3d at 209 n.7. The overwhelming weight of authority
supports the interpretation dictated by the statute's plain
meaning: that the QDRO exception to ERISA pre-emption applies to
both pension plans and welfare benefit plans. See Metro. Life
Ins. Co. v. Price, 501 F.3d 271, 275 n.2 (3d Cir. 2007); Bigelow,
283 F.3d at 440 n.3; Metro. Life Ins. Co. v. Pettit, 164 F.3d
857, 863 n.5 (4th Cir. 1998); Metro. Life Ins. Co. v. Marsh, 119
F.3d 415, 421 (6th Cir. 1997); Metro. Life Ins. Co., v. Wheaton,
42 F.3d 1080, 1083-84 (7th Cir. 1994); Carland v. Metro. Life
Ins. Co., 935 F.2d 1114, 1119-20 (10th Cir. 1991); see also J.

8

Jorden, W. Pflepsen & S. Goldberg, Handbook on ERISA Litigation, § 5.05[D] at 5-110 n.417 ("The QDRO exception to ERISA's preemption provision applies to both welfare and pension plans.").  While our court of appeals has not squarely addressed the issue, it has cited Pettit, Marsh, Wheaton and Carland with approval, stating that "we see no obvious reason why we would depart from the prevailing view."  Barrs, 287 F.3d at 209 n.7.

"The preeminent canon of statutory interpretation requires [courts] to presume that the legislature says in a statute what it means and means in a statute what it says there."  BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004) (quotation omitted).  Thus, the court's inquiry in a statutory interpretation case "begins with the statutory text, and ends there as well if the text is unambiguous."  Id.; see also Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 8 (1st Cir. 2007) (explaining that where the statutory "language is clear and unambiguous, the inquiry is at an end").  This same reasoning precludes the consideration of other interpretive aids, such as the presidential signing statement issued by President Ronald Reagan upon the Retirement Equity Act's enactment,[4] proffered by claimant Judith Rideout at oral argument, and her argument,

---

[4]Statement on Signing the Retirement Equity Act of 1984, 20 Weekly Comp. of Pres. Doc. 35 (1984).

citing the Supreme Court's recent opinion in <u>Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan</u>, 129 S. Ct. 865 (2009), that application of the QDRO exception to welfare plans is inconsistent with Congressional intent.[5]  Even if it were this court's business to ascertain Congress' purpose in enacting legislation, rather than the meaning of the legislation itself, this court "cannot understand why, if a qualified domestic relations order can override the designation of beneficiary in a pension plan, as Congress in the Retirement Equity Act decided that it can, Congress would not have allowed such an order to override the designation of beneficiary in a welfare plan" such as the Hanson insurance policy.  <u>See</u> <u>Wheaton</u>, 42 F. 3d at 1083.

## IV.  <u>Conclusion</u>

The motion for summary judgment filed by Phyllis' children[6] is GRANTED, and Judith Rideout's motion for summary judgment[7] is DENIED.  The interpleader defendants other than Phyllis' children are ordered to show cause (if such cause exists), through the

---

[5]The court notes that in <u>Kennedy</u>, "the QDRO provisions shed no light on" the issue being decided, which involved the applicability of ERISA's anti-alienation provision to a non-QDRO waiver.  <u>Id.</u> at 873.

[6]Document no. 29.

[7]Document no. 32.

filing of a memorandum within 14 days from the date of this order

why the entire proceeds of the Hanson insurance policy on deposit

with the court should not issue to interpleader defendants

Christina L. Hogan, William S. Hanson, and Jill E. Hanson.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  October 1, 2009

cc:  William D. Pandolph, Esq.
     Jeanne P. Herrick, Esq.
     Jackson W. Casey, Esq.
     Jonathan A. Lax, Esq.
     Patrick M. McAvoy, Esq.

11